# IN THE UNITED STATES BANKRUPTCY COURT

## Middle District of Pennsylvania

FILED
HARRISBURG, PA
2019 DEC -5 PM 2: 41
CLERK
U.S. BANKRUPTCY COURT

IN RE: WILLIAM C. NEAL,　　　　　　*
AKA BILL C. NEAL,
*debtor*

　　　　　　　　　　　　　　　　　*

CGA LAW FIRM, P.C.
*movant*　　　　　　　　　　　　　　*

v.　　　　　　　　　　　　　　*PLEADINGS IN THIS CASE ARE BEING*
　　　　　　　　　　　　　　　　　*FILED BY DEBTOR IN PROPIA PERSONA*

WILLIAM C. NEAL
*respondent*　　　　　　　　　CHAPTER 13
　　　　　　　　　　*　CASE NO. 1:17-bk-04018-HWV

　　　　　　　　　　　　　　　　*

case being followed by Maryland Court Watch / www.secretjustice.com
and copy of filings forwarded to Dr. Cordero
*******************************************************************************************************

## DEBTOR NOTICE OF APPEAL OF RULING(S) AND ACTIONS OF COURT
## IN ABOVE CAPTIONED CASE ON 12.04.2019

　　　Debtor/respondent William C. Neal, a *pro se* litigant, files the following notice

to the court that he is appealing the rulings made and actions taken in the above

captioned case by Judge Henry W. Van Eck on December 04. 2019. with the following

pleading to serve as a memoradum of support:


## FACTS

1.) William C. Neal owns 3 pieces of property:

　　a.) his residence of 40 years at 19795 Barren Road South   Stewartstown, Pennsylvania

17363

　　b.) an old movie theatre at 3 South Main Street, Stewartstown, Pennsylvania 17363

1

c.) an old weldshop at 1531 East Forrest Avenue Shrewsbury, Pennsylvania 17363

2.) the local boroughs and townships have been blocking his proper and legal use of these properties for years, while services such as PENNWASTE have repeatedly made attempts to make the debtor pay bills for services he was not utlilizing; and as such the debtor has spent time and money locked in battles while not receiving income from the properties, to the point he began not paying taxes on said properties, and as such was filing bankruptcies for protection. Cases were often tilted, as debtor won case against PENNWASTE in arbitration the first time, but the company continued to refile new bills and eventually got a judge to illegally rule in their favor. Sewer and water bills were similar situtations.

3.) Larry Young of CGA law firm was retained as debtor lawyer during one of these bankruptcy proceedings. The debtor had lost a house he put $100,000 cash down on but could no longer afford to pay. Personal property of the debtor was still in the house for several months and as such the owner was demanding storage fees. Mr. Young arranged terms for repayment that were absorbetant and resulted placing the debtor into much greater debt. Mr. Young also handled funds from sale of one of the debtor's properties, at that time, to satisfy a bankruptcy, but proper documentation of said deal and its accounting have never been properly provided to the debtor, who saw no net funds from said deal.

4.) Mr. Young has now become a creditor attorney for CGA, creating an apparent conflict of interest and rank with improprieties, as Mr. Young was given priviledged information and had access to records that the debtor provided in the confidence of a client-attorney relationship, which now can easily be used adversarily against the debtor

5.) both of the debtor's commerical properties are in disrepair and other commercial properties with potentially lower asking prices but which are in better condition and have been on the market longer, are showing no indication of being sold anytime soon.

6.) as part of the plan stipulations the debtor was working towards, he advertised both

commercial properties with Naomi Brown, a realtor with Berkshire Hathaway, whom had

approached the debtor about becoming realtor of record; though the advocate voiced

concerns about her magically appearing just when the debtor needed to hire a realtor.

Mrs. Brown, without input from the debtor set comps on the properties as $550,000

for the old weldshop and $250,000 for the old theatre. But she never provided the debtor

with any offers even close to said comps. She instead stated she had an offer of $40,000

then later $91,000 on the weldshop, both from the same individual. On the theatre,

she first said she had an offer of $100,000 from a "investor qroup", which entailed tying

up the property from alternative sale while they did studies etc. with no time frame to

perform; but then nothing ever materialized. Later an alternative offer was claimed to

have been made for $20,000. None of these offers were even presented to the debtor

other than verbally from Ms. Brown, it would not begin to cover the bankruptcy funds

needed and it was no where near the comps Ms. Brown herself set, so the debtor had

no proper offers ever given to him by Ms. Brown. When her contract with the debtor

ended, he began to procure a more aggressive realtor he felt he might be better able to

trust. He found a realtor he wanted to go with in October, but said realtor stated she could

not take over, as Ms. Brown had relisted the properties on September 9, 2019, prior to it

even having expired and still was advertising said properties as realtor of record, even

though she had no contract with or had even contacted the debtor of intent. As such she

was blocking the debtor from alternative listings. A letter was written to her and pictures

were taken dated November 5, 2019 showing the signs and lock box still in place on the

property, as was again photographed on December 4, 2019.

7.) debtor has on his own been reaching out to individuals and companies to try to see

a deal struck to purchase one or both properties, in order to fully pay off all of the

bankrupctcy debt stated, with the exception of knowing fully what is owed the trust

involved as it was $12,000  originally set up by Stock and Leader, which debtor assumes

has interest attached, though neither the court or Mr. Young have ever provided debtor

with proper documentation.

8.) debtor was referred to John Hyams, an attorney for potential representation,

and he paid said attorney $1000. Mr. Hyams appeared at the previous hearing,

stating he might take the case, but then walked away

9.) debtor continued to seek out another attorney to take over his case, and found

attorney Tony Sangiamo in York. His secretary relayed for the debtor to request a

continuance at the hearing on December 4, 2019, so that the attorney could take over

the case fully.

10.) debtor followed the instruction of the attorney, but Judge Van Eck denied the debtor

request, and converted it into a Chapter 7 with intent to set up an auction of the debtor's

properties. Debtor was not a trained, experienced attorney, but had hired one to act on his

behalf, and the court denied him his right to counsel, a fair fight in court, and civil rights to

due process of the law. Larry Young of CGA Law Firm was repeatedly quizzed as to his wishes

in this matter, by the judge, before a ruling was made. Meanwhile, the debtor, particularly

with his lack of knowledge of legal proceedures and law, could not and did not properly

respond to statements, such as, Mr. Youngs claim if the caser was simply dismissed, the

debtor would not try to sell the property, simply returning to his "old ways". The court

in turn ignored the debtor raising  issues of Mr. Young having been his attorney and now

4

was his adversary, being involved in questionable dealings with him that have yet to be

resolved and the true nature of what is owed. The court likewise had ignored advocate's

judicial notice that there appears to be repeated bias in the Middle District Bankruptcy

Court by judges in favor of CGA lawyers and illegal acts by said lawyers, that have resulted

in complaints to the FBI and filing of federal law suits.   The debtor was never afforded a

legal and proper opportunity to explain why the verbal only offers that did not come even

close to the comps set by Ms. Brown nor would never properly fund the bankruptcy were

rejected by him. Meanwhile, Mr. Young lauded Ms. Brown and Berkshire Hathaway's

reputation and competency to the court, when nothing beneficial was done for the debtor,

who was in facts blocked from alternative listing by Ms. Brown. The court heaped praise

upon Mr. Young for "allowing" the debtor to return to a Chapter 13, but who controls the

decisions in court - purportedly the judge. Evidence of Chad Peter's potential purchase

of the theatre, Mr. Brown's blocking of the relisting alternatively and malacts by Mr. Young

could, would and should have been entered into court iff the debtor had been properly

represented through the allowance of a continuation for his legal counsel to be present.

### ARGUMENTS

1.) this court had previously ignore debtor's request to use alternative representation

when he had no attorney present, but was ignored in violation of law:

   a.) "State courts, like federal courts, have a constitutional obligation to safeguard

personal liberties and to uphold federal law." *Stone v. Powell, 428 US 465, 483 n 35, 96 S.

Ct. 3037, 49 L. Ed. 2d 1067 (1976)*

   b.) *Section $7 of the 14th Amendment to the Constitution,*    "requires that action by

a state through any of its agencies must be consistent with the fundamentals of liberty

and justice."

c.) "Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for the law; it invites every man to become a law unto himself; it invites anarchy." *Olmstad v United States, (1928) 277 U.S. 438*

d.) "it is the duty of the court to be watchful for Constitutional Rights of the citizen, against any stealthy encroachments thereon." *Boyd v U.S.. 116 US 616, 635 (1885)*.

e.) "The assertion of federal rights, when plainly and reasonably made, are not to be defeated under the name of local practice."   Davis v. Wechler, 263 U.S. 22, 24; Stromberb v. California, 283 U.S. 359; NAACP v. Alabama, 375 U.S. 449

2.) debtor has a right to exercise his civil rights under law

a.)  "There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Rights."  Sherar v. Cullen, 481 F. 2d 946 (1973)

b.) "Where rights secured by the Constitution are involved, there can be no 'rule making' or legislation which would abrogate them." Miranda v. Arizona, 384 U.S. 426, 491; 86 S. Ct. 1603

3.) courts clearly understand the adverse situtaion a litigant is placed into when forced to fight a case against trained, experienced attorneys, while case precedent and law prescribes a heightened duty of care by the court towards *pro se* litigants:

a.) early on courts realized the disadvantage of being forced to fight *pro se*: In *Powell v. Alabama, 287 U.S. 45 (1932)*, an early right to counsel case, the Supreme Court wrote: "Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he have [sic] a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect."

b.) Federal courts have long recognized that the pleadings of a *pro se* litigant must be contrued literally and held 'to less stringent standards than formal pleadings drafted by lawyers'. "*Erickson, 551 U.S. at 94 (citation omitted).*"

c.) Thus, the Court will "accept as true all of the allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to [Plaintiff]." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

d.) In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient inform-ation to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

e.) "substantial justice, . . . commands that judges painstakingly strive to insure that no person's cause or defense is defeated solely by reason of their unfamiliarity with procedural or evidentiary rules. . . . Cases should be decided on the merits, and to that end, justice is served by reasonably accommodating all parties, whether represented by counsel or not. This "reasonable accommodation" is purposed upon protecting the meaningful exercise of a litigant's constitutional right of access to the courts." Blair v. Maynard, 324 S.E.2d 391 (West Virginia 1984).

f.) 28 USC 1654 duty of the courts. Implicit in the right to self-representation is obligation on part of the courts to make reasonable allowances to protect pro se litigant from inadvertent forfeiture of important rights because of their lack of any legal training Traught v, Zuck C.A.2. (N.Y.) 1983 710 F.2.d 90 attorney and client. Md. Rule 16 814 (2.6) emphasis in the law

g.) Because the petitioner is pro se, the Court has a higher standard when faced with

a motion to dismiss, White v. Bloom, 621 F.2d 276 makes this point clear and states:

"A court faced with a motion to dismiss a pro se complaint must read the complaint's allegations expansively", Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972), and

"take them as true for purposes of deciding whether they state a claim." Cruz v. Beto, 405 U.S. 319, 322, 92 S. Ct. 1079, 1081, 31 L. Ed. 2d 263 (1972).

h.) The courts provide pro se parties wide latitude when construing their pleadings and papers. When interpreting pro se papers, the Court should use common sense to determine what relief the party desires. S.E.C. v. Elliott, 953 F.2d 1560, 1582 (11th Cir. 1992). See also, United States v. Miller, 197 F.3d 644, 648 (3rd Cir. 1999) (Court has special obligation to construe pro se litigants' pleadings liberally); Poling v. K.Hovnanian Enterprises, 99 F.Supp.2d 502, 506-07 (D.N.J. 2000).

i.) Petitioner has the right to submit pro se briefs on appeal, even though they may be in artfully drawn but the court can reasonably read and understand them. See, Vega v. Johnson, 149 F.3d 354 (5th Cir. 1998). Courts will go to particular pains to protect pro se litigants against consequences of technical errors if injustice would otherwise result. U.S. v. Sanchez, 88 F.3d 1243 (D.C.Cir. 1996).

j.) "the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." Bonner v. Circuit Court of St. Louis, 526 F.2d 1331, 1334 (8th Cir. 1975) (quoting Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974)). Thus, if this court were to entertain any motion to dismiss this court would have to apply the standards of White v. Bloom. Furthermore, if there is any possible theory that would entitle the petitioner to relief, even one that the petitioner hasn't thought of, the court cannot dismiss this case.

k.) "... the right to file a lawsuit pro se is one of the most important rights under the constitution and laws."  Elmore v. McCammon (1986) 640 F. Supp. 905 Elmore v. McCammon

8

(1986) 640 F. Supp. 905

4.) while the court ruled no continuance would be allowed to represent the debtor,

his advocate was also present and under the law could have provided assistance:

a.) "Litigants can be assisted by unlicensed laymen during judicial proceedings."

Brotherhood of Trainmen v. Virginia ex rel. Virginia State Bar, 377 U.S. 1; v. Wainwright,

372 U.S. 335; Argersinger v. Hamlin, Sheriff 407 U.S. 425

b.) "A next friend is a person who represents someone who is unable to tend to

his or her own interest."    Federal Rules of Civil Procedures, Rule 17, 28 USCA "Next Friend"

c.) Members of groups who are competent nonlawyers can assist other members

of the group achieve the goals of the group in court without being charged with

"Unauthorized practice of law." NAACP v. Button, 371 U.S. 415); United Mineworkers of

America v. Gibbs, 383 U.S.715; and Johnson v. Avery, 89 S. Ct. 747 (1969) -

secret justice is working to assure justice in court proceedings, the same justice the debtor

sought out in this court, as a member of "WE THE PEOPLE" simple American citizens

5.) courts must assure not only fairness but the image of the same, while protecting civil

rights to due process of the law:

a.) The fundamental requirement of due process is the opportunity to be heard

'at a meaningful time and in a meaningful manner.' Armstrong v. Manzo,

380 U.S. 545, 552 (1965). See Grannis v. Ordean, 234 U.S. 385, 394 (1914)."

Mathews v. Eldridge, 424 U.S. 319, 332-333 (1976). See also Goss v. Lopez,

419 U.S. 565(1975); Perry v. Sindermann, 408 U.S. 593 (1972); Fuentes v. Shevin,

407 U.S. 67 (1972); Stanley v. Illinois, 405 U.S. 645 (1972); Connell v. Higginbotham.

403 U.S. 207 (1971) (per curiam); Wisconsin v. Constantineau, 400 U.S. 433 (1971);

Goldberg v. Kelly, 397 U.S. 254 (1970); Sniadach v. Family Finance Corp., 395 U.S.

337 (1969).

b.) "Fairness of course requires an absence of actual bias intrial cases. But our

In *re Murchunson, 349 U.S. 133, 136 (1955)*

c.) "Where a court failed to observe safeguards, it amounts to a denial of due

process of law, a court is deprived of *juris.*" *Merritt v Hunter, C.A. Kansas 170 F2d 739.*

d.) courts lack jurisdiction when they violate laws and civil rights:

A court lacks jurisdiction anytime it denies you the Bill of Rights or amendments, part-

icularly Due Process 1308 *(C.A. 10 (Colo.), 1994); V.T.A., Inc. v. Airco, Inc., 597 F. 2d*

*220, 221 (1979).* A judgement reached without due process of the law is without

jurisdiction and thus void. *Bass v. Hoagland, 172 F. 2d 205, 209 (1949).* Any motion for

relief from a void judgement is timely reguardless of when it is filed. *V.T.A., Inc., supra@*

*224 (footnote no. 9).* If a judgement is void, it is a nullity from the outset and any Civ. R60

(B) motion is therefore filed within a reasonable time. *Omer v. Shala, supra@1308.*

e.) "Substantive Due Process provides heightened protection against government

interference with certain fundamental rights and liberty interest." *Samuels v Tschechtelin,*

*200, 763 A. 2d 209, 135 Md. App. 483.*

f.) "the right to be heard must necessarily embody a right to file motions and

pleadings essential to present claims and raise relevant issues." *See Willner v.*

*Committee on Character and Fitness, 373 U.S. 96, 373 U.S.105*

g.) "Law requires not only impartial tribunal, but that the tribunal appears

to be impartial." *28 U.S.C.A. 455. In Re Tip-PaHands Enterprises, Inc. 27 B.R. 780*

*(U.S. Bankruptcy Ct.)*

h.) "Acts in excess of judicial authority constitutes misconduct, particularly where

a judge deliberately disreguards the requirements of fairness and due process."

*Cannon v. Commission on Judicial Qualifications, (1975) 14 Cal. 3d 678, 694.*

6.) American citizens are additionally afforded protections under the United Nations

Doctrine, Internation Covenent of Civil and Political rights, as the U. S. was a

signator country, which prescribes that all citizens have a right to fair, open public

hearings before competent judges in all civil and criminal matters.

7.) judicial fraud encompasses judicial acts that corrupt and/or weaken the judiciary:

    a.) "Whenever an officer of the court commits fraud during a proceeding in the court he/she is engaged in "fraud upon the court ". In *Bullock v. United States, 763 1121 (10th Cir. 1985)*, the court stated "fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury ..... It is where the judge has not performed his judicial function - thus where the impartial functions of the court have been directly corrupted."

    b.) "'Fraud upon the court' has been defined by the 7th Circuit of Appeals to "embrace the species of fraud which does, or attempts to, defile the court itself, or is fraud perpetuated by the officers of the court so that judicial machinery can not perform in the usual manner its impartial task of adjudicating cases that are presented for adjudication." *Kenner v. C.I.R., 387 F. 3rd 689 (1968); 7 Moore's Federal Practice, 2nd ed. p 512* ¶ The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final"."

## CONCLUSION

The law clearly states what protections are to be afforded litigants and special treatment to be extended to *pro se* litigants. Judges are charged witrh upholding the Constitution, civil rights and laws with the oath they take; and can be held fully accountable, even civilly when they violate this. Litigants, while having an absolute legal right to self-represent, also have a right to representation, whether it takes the form of an attorney, advocate, next-friend, etc. Court interference with this, acts to create bias against a litigant, violates his/her due process civil rights, and then acts to create a "void judgement" ruling that is invalid in the eyes of the law. It also

11

acts to create fraud upon the machinery of the judiciary, which could lead to invalid-

ation of the judicial system as a tool to resolve citizen issues, that in turn would

then lead the anarchy in the potential to alternate into natural law, as spoken of

by the Supreme Court. Case precident supports these arguments. The actions that

Judge Van Eck took in his court room on December 4, 2019 upon the debtor did

act to deny debtor civil rights to due process of law; the right to be heard at a proper

time, place, and manner; to have a hearing without the bias of being denied represen-

tation of any kind; his prescribed protections as a *pro se* litigant, abeit a forced one;

etc. Judges must adhere to their oaths of office and the court must operate within

the confines prescribed, lest they become law breakers, treasonous to the Constitution

the law states they must uphold. As such Judge Van Eck's ruling was a "void judgement"

that other courts must recognize and deal with as such, and a proper hearing should

be reconviened to deal with the issues in an unbiased, law abiding forum.


   *THUS*, debtor, William C. Neal humbly provides the above in support of his

request for a new hearing in these matters, in a proper unbiased forum, before

competent judiciary.


                                        Respectfully submitted,


_____          _____
William C. Neal                                 date
19795 Barren Road South
Stewartstown, Pennsylvania 17363
   717-309-2577
   *debtor/respondent*

I, William C. Neal, certify that a copy of this document has been mailed

pre-paid through the United States Postal Service current listed parties of

interest per court records in this case:

Lawrence V. Young  CGA Law Firm (creditor)  CGA Professional Center  135 North

George Street   York, Pennsylvania 17401,

Steven M. Carr (trustee), Ream, Carr, Markey, Woloshin, & Hunter, LLP

119 East Market Street, York, Pennsylvania 17401

Charles J. DeHart, III (trustee), 8125 Adams Drive, Suite A, Hummellstown,

Pennsylvania 17036

this _____ day of  December 2019.


_____          _____
William C. Neal                                               date   12/04/19
19795 Barren Road South
Stewartstown, Pennsylvania 17363
      717-309-2577
   *debtor/respondent*


ADDITIONALLY:

U.S. TRUSTEE  228 WALNUT STREET, SUITE 1190  HARRISBURG, PA. 17101